ARTHUR J. MALETTO and )
M & M CONTRACTORS, INC., )
                            )
         **Plaintiffs,** )     **Case No. 1:18-cv-309-SPB**
        **v.** )
                           )
CAPITAL ONE FINANCE CORP. and )
CAPITAL ONCE BANK (USA), N.A., )
                            )
        **Defendants.** )

## MEMORANDUM OPINION

In this civil action, Plaintiffs Arthur J. Maletto and M&M Contractors, Inc. ("Plaintiffs") have sued Capital One Finance Corp. and Capital One Bank (USA), N.A. (collectively, "Capital One" or "Defendants") for alleged violations of the Truth in Lending and Fair Credit Billing Act, 15 U.S.C. §§1601, *et seq.* and related theories under Pennsylvania common law. The claims arise from losses that M & M Contractors, Inc. ("M&M") sustained after an employee opened a credit account in the company's name and surreptitiously misappropriated $446,550.60.

Pending before the Court is the Defendants' motion to dismiss the Plaintiffs' operative pleading. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff M&M is a closely held Pennsylvania corporation whose principal place of business is located in Elk County. First Amended Compl. ("FAC"), ¶3. M&M's corporate officers include Plaintiff Arthur J. Maletto, Jeffrey Maletto, and James Maletto. Id. ¶15.

At some point in time not specified in the pleading, Arthur Maletto, acting as President of M&M, opened a corporate credit card account with Capital One. FAC ¶12. The address of

record for the corporate credit account was M&M's business address in Johnsonburg, Pennsylvania. Id. ¶13. Arthur Maletto authorized Capital One to issue three cards on the M&M credit account – one in the name of each corporate officer. Id. ¶14.

On July 30, 2007, M&M hired Melissa Bittler ("Bittler") to work as an administrator in M&M's business office. FAC ¶16. Bittler's duties involved, among other things, receiving statements for M&M's corporate credit account with Capital One, reconciling charges on the account with M&M's corporate records, and processing payments on the account. Id. ¶17. By virtue of her duties as M&M's office administrator, Bittler gained access to the company's financial information, as well as the officers' personal information. Id. ¶18.

In or around 2012, Bittler surreptitiously opened a second Capital One credit account (the "Second Credit Account") in M&M's name, falsely identifying herself as one of the company's officers and authorized users. FAC ¶¶19-22. Bittler then directed Capital One to issue credit cards in the names of each of the three corporate officers as well as herself. *Id.* ¶22. In the credit application form, Bittler identified her own personal residence as the address of record for the business. Id. ¶23. Based on Bittler's fraudulent application, Capital One issued credit cards in the name of Arthur Maletto, Jeffrey Maletto, James Maletto, and Bittler. Id. ¶24. The credit cards, opening documentation, credit agreement forms, and all subsequent statements were mailed to Bittler's personal address, without the knowledge or consent of M&M's corporate officers. Id. ¶¶24-25.

Between 2012 and May of 2017, Bittler used the Second Credit Account to make unauthorized cash withdrawals from ATM machines as well as unauthorized purchases of personal, family, or household goods. FAC ¶¶26-27. No similar cash advances were ever made on M&M's original credit account, nor were any cash advances made by the corporate officers

on the Second Credit Account. Id. ¶28. Moreover, the charges made to the Second Credit Account by Bittler were of a wholly different nature, and far exceeded in number and amount, the charges that were made by M&M's officers on either account. Id. ¶¶29-30.[1] All told, Bittler misappropriated some $446,550.60 from M&M through her unauthorized use of the Second Credit Account. Id. ¶33. Bittler accomplished this by stealing M&M's checks, forging the signatures of its corporate officers, and using the checks to pay off the Second Credit Account. ¶¶31-32.

On or about May 2, 2017, M&M's corporate officers discovered the misappropriation of corporate funds. FAC ¶34. On or around May 3, 2017, Capital One mailed M&M copies of the billing statements it had issued to Bittler relative to the Second Credit Account. Id. ¶61. Plaintiffs maintain that "M&M did not receive the statements and/or did not have a reasonable opportunity to evaluate and investigate the statements until on or after May 6, 2017." Id. ¶62.

On May 15, 2017, Plaintiffs registered a verbal dispute as to the alleged fraudulent charges on the Second Credit Account. *See* FAC Ex. A, ECF No. 11-1. Plaintiffs' attorney followed up with a letter to Capital One on June 6, 2017, which stated the following:

> On May 15, 2017, my clients and I spoke with Jordan M. in the Capital One Fraud Department about disputed/fraudulent charges made to the above account. Jordan M. was told during the discussion that nearly every charge made on the account since its inception was by an unauthorized card user. After review of all of the account statements, it appears that there were approximately $296,416.58 in fraudulent charges.[2]

> The purpose of this letter is to memorialize the May 15 discussion and to formally make a claim for a refund and/or chargeback of the unauthorized charges, together with all interest payments and fees related thereto. In addition, my clients are hereby disputing

---

[1] While the Amended Complaint and appended exhibit indicate that charges were made on the cards issued in the names of M&M's corporate officers relative to the Second Credit Account, the pleading does not elucidate what those charges were or who is believed to have made them. *See* FAC ¶¶29-30; *see also* FAC Ex. A, ECF No. 11-1.

[2] The Court assumes for present purposes that the $296,416.58 figure represented Plaintiffs' initial, best estimate of total amount of fraudulent charges and that $446,550.60 is the true, accurate figure.

their obligation to pay the outstanding balance on the account. If there are forms that need to be filled out for Capital One to process the refund/chargeback request or the dispute related to the account's outstanding balance, please send them to me as soon as possible. I will also ask that you provide me with instructions on how the at-issue charges should be specifically identified.

Jordan M. was not able to provide copies of any paper or electronic applications that were made when the account was opened or any subsequent applications for issuance of additional cards. Please consider this letter as a request for production of all applications (written or electronic) related to this account. If any of the applications were made electronically, I will ask that you provide the IP address from which the application was submitted. In addition, please provide all card holder agreements that apply to this account.

FAC Ex. A, ECF No. 11-1.

Capital One did not respond to the foregoing correspondence until June 25, 2018, more than one year later. FAC ¶36. When it did respond, Capital One did not provide the information that M&M's counsel had requested. Id.

According to Plaintiffs, Bittler's activities relating to the application, use, and payment of the Second Credit Account should have been suspicious to Capital One and should have led Capital One to investigate Bittler's application. FAC ¶¶39, 42. Had Capital One done so, Plaintiffs aver, Capital One would have discovered that the application was fraudulent. Id. Plaintiffs also fault Capital One for not monitoring the activity on the Second Credit Account after it was opened. Id. ¶41. Plaintiffs posit that proper monitoring would have led Capital One to discover that Bittler was using the account to make fraudulent charges and misappropriating M&M's funds to pay off the account. Id.

To date, Capital One has not refunded, or charged back, the amounts that M&M paid to cover Bittler's fraudulent charges, nor has it written off the charges made by Bittler that remain unpaid. FAC ¶¶44-45. Based on "information and belief," Plaintiffs allege that Capital One has submitted adverse reports about the Plaintiffs' credit ratings to various credit reporting agencies, or may soon do so. Id. ¶¶49, 76.

As a result of these alleged events, Plaintiffs commenced this lawsuit on October 10, 2018. ECF No. 1. Plaintiffs' operative pleading, the First Amended Complaint, sets forth eight separate causes of action. ECF No. 11. Counts I through IV assert claims under the Truth in Lending Act ("TILA") and Fair Credit Billing Act, 15 U.S.C. §§ 1637, 1643, and §1666. Counts V through VI set forth claims under Pennsylvania law for alleged negligence, conversion, unjust enrichment, and breach of contract.

Defendants filed the pending motion to dismiss, and accompanying brief, on February 6, 2019. ECF Nos. 19 and 20. Therein, they argue that Plaintiffs' various federal and state claims are time-barred or otherwise fail to state a cognizable basis for relief. Plaintiffs filed their brief in opposition to the motion on February 25, 2019, ECF No. 23, and Defendants filed their reply on March 8, 2019. ECF No. 26. As a result of these filings, the motion is ripe for adjudication.

## II.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure recognizes a defense based upon the plaintiff's failure to state a claim upon which relief can be granted. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. TILA Claims

#### 1. *Statute of Limitations*

Defendants' first defense is that the Plaintiffs' TILA claims are time-barred. The TILA contains a one-year statute of limitations, which runs "from the date of the occurrence of the violation[.]" 15 U.S.C. §1640(e). Here, Plaintiffs concede that their TILA claims were initiated more than one year after May 2, 2017, the date on which Plaintiffs learned of the Second Credit Account. Nevertheless, Plaintiffs contend that the doctrine of equitable tolling renders their claims timely.

Under Third Circuit law, "[a] statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). The defense can be successfully asserted in a Rule 12(b)(6) motion only "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt*, 770 F.3d at 249 (citation omitted); *see Stephens*, 796 F.3d at 288 (court noting that it could grant a Rule 12(b)(6) motion only "if the face of the complaint demonstrates that the plaintiff's claims are untimely") (internal quotation marks and citations omitted).

Once a defendant has successfully raised a statute of limitations defense to a claim, it generally is the plaintiff's burden to show the statute of limitations should be equitably tolled.

*Arizmendi v. Lawson,* 914 F. Supp. 1157, 1160 (E.D. Pa. 1996). Equitable tolling is applied "sparingly" and only in the following circumstances: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Glover v. Fed. Deposit Ins.,* 698 F.3d 149, 151 (3d Cir. 2012) (citation omitted). "At the motion to dismiss stage, a plaintiff who seeks to invoke equitable tolling need only 'plead the applicability of the doctrine.'" *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994) (holding that a plaintiff who pled in her complaint that her law firm actively misled her in support of her request for application of the discovery rule had sufficiently pled the application of the doctrine), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018); *see Moody v. Conroy*, 680 F. App'x 140, 143 (3d Cir. 2017) (declining to dismiss claim at Rule 12(b)(6) stage because plaintiff "pleaded sufficient facts to allege that the defendants actively misled him concerning the facts underlying his cause of action").

In addition, a plaintiff seeking the benefit of equitable tolling must show he has satisfied "the obligation . . . to exercise due diligence to preserve his or her claim." *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997). These criteria apply even where the plaintiff acted through an attorney. *Komosa v. United States Postal Serv.*, 764 F. App'x 189, 192 (3d Cir. 2019) (citing *Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 16 F.3d 1386, 1394 (3d Cir. 1994)).

With these principles in mind, we consider each of Plaintiffs' TILA claims.

### a. Alleged Violation of 15 U.S.C. §1637 (Count I)

In Count I of the Amended Complaint, Plaintiffs allege that Capital One violated 15 U.S.C. §1637, which requires creditors, "[b]efore opening any account under an open end consumer credit plan," to make certain disclosures – including, e.g., the conditions under which a finance charge may be imposed, the method of determining the amount of balances or finance charges, the identification of any other charges that may be imposed, and the like. Plaintiffs admit that Capital One sent "all account opening documents and agreements" to Bittler's residence, which was the account address of record, but they allege that Capital One "did not send information about the Second Credit Account to M&M Contractors' corporate office address or to any of the corporate officers." FAC ¶25. In their brief, Plaintiffs contend that the violation of §1637 occurred when Capital One failed to provide M&M with required financial disclosures, which was allegedly in 2012.

Because the filing of this lawsuit plainly occurred well outside of the one-year period following the opening of the Second Credit Account, the question is whether the statute of limitations was equitably tolled. Plaintiffs contend that "extraordinary circumstances" tolled the statute for two periods of time. First, they claim that the statute was tolled until at least May 2017, because "M&M did not know of the fraudulent credit account" until that date, "nor was M&M provided information from which they could have discovered the existence of the account." ECF No. 23 at 5-6. Second, they maintain that the statute was tolled until June 25, 2018, because M&M, through its June 6, 2017 correspondence "timely sought information that was exclusively in Capital One's possession [in order] to investigate the facts underlying the fraud and to determine their rights," id., at 6, but Capital One did not respond to M&M's request for information until June 25, 2018.

Plaintiffs' argument is unpersuasive. As to the time period from 2012 to May 2017, when M&M's officers discovered the existence of the Second Credit Account, it is questionable whether Plaintiffs have pled facts showing that "extraordinary circumstances" prevented them, through the exercise of due diligence, from discovering the violation in question and asserting their rights. Plaintiffs allege that M&M could not have known of the Second Credit Account because it did not have access to the Second Credit Account opening documents and billing statements, and because Bittler surreptitiously forged corporate checks in order to cover the charges to the account. Notably, Plaintiffs do not aver that they lacked access to the company's banking records, an examination of which would have presumably revealed the regular payments that Bittler was surreptitiously making to cover charges on the Second Credit Account. By giving Bittler access to the company's confidential financial information and records, but then evidently failing for nearly five years to conduct an audit of the company's banking records, Plaintiffs arguably failed to exercise due diligence to preserve their rights. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (noting that principles of equitable tolling do not extend to "what is at best a garden variety claim of excusable neglect"); *accord Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) ("Running throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim.").

Even assuming, however, that the one-year statute of limitations was equitably tolled until May 2017 (when Plaintiffs admittedly learned about the Second Credit Account), there is no basis for finding that the statute was equitably tolled beyond that point. The Amended Complaint and related exhibit establish that: Plaintiffs learned of Bittler's use of the Second Credit Account on May 2, 2017; Capital One mailed M&M's billing statements for the account on or about the next day; and, after reviewing those statements, Plaintiffs and their attorney

verbally disputed "nearly every charge made on the account" in a May 15, 2017 conversation with Capital One's Fraud Department. FAC ¶¶59, 61; ECF No. 11-1. By virtue of their awareness of the Second Credit Account, Plaintiffs were on notice that M&M had never received, through its corporate officers, any disclosures whatsoever in connection with the opening of that account, which appears to be the essence of their grievance. The fact that Plaintiffs' counsel thereafter wrote to Capital One seeking additional information is irrelevant because, as of May 15, 2017, no additional information was needed in order for Plaintiffs to be informed about the basis for the alleged §1637 violation. Plaintiffs did not file suit within the one-year period following May 15, 2017; therefore their claim predicated on the alleged violation of §1637 is time-barred.

### b. Alleged Violations of 15 U.S.C. §1666 (Count IV)

Section 161(a) of the TILA, as added by the Fair Credit Billing Act, provides that whenever a creditor sends an obligor a statement of the obligor's account "in connection with an extension of consumer credit" and the obligor believes that the statement contains a billing error, the obligor may send the creditor a written notice. 15 U.S.C. §1666(a). In order to trigger the protections of Section 161(a), the obligor must send the written notice of the alleged billing error to the creditor within sixty (60) days after the creditor has sent the billing statement containing the disputed charge. Id. If such timely notice is sent by the obligor, the creditor then must acknowledge receipt of same within thirty (30) days. Id. §1666(a)(3)(A). In addition, the creditor must investigate the matter, and send either: (i) written notification that the error has been corrected or (ii) a written explanation of why the creditor believes that the original statement was correct. Id. §1666(a)(3)(B)(i)-(ii). The latter notice must be sent "not later than two complete billing cycles . . . ([and] in no event later than ninety days) after the [creditor's]

receipt of the notice [of the allegedly erroneous charge] and prior to taking any action to collect the [disputed] amount . . . ." Id. §1666(a)(3)(B). "After complying with the provisions of [§1666(a)] with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error." Id. §1666(a)(3)(B).

Count IV of the Amended Complaint is predicated upon alleged violations of 15 U.S.C. §1666. According to Plaintiffs, "[t]he violation of §1666 occurred when Capital One failed to resolve M&M's billing objections after receiving timely notice that the charges posted to the account were fraudulent." ECF No. 23 at 4.

Based upon the allegations in the Amended Complaint, it appears that the "timely notice" to which Plaintiffs refer is the correspondence that Plaintiffs' lawyer sent to Capital One on June 6, 2017. ECF No. 11-1. Upon receipt of this notice, Capital One then had thirty days – until roughly July 6, 2017, within which to provide a written acknowledgement that it had received Plaintiffs' notice. See 15 U.S.C. §1666(a)(3)(A). Further, Capital One had no more than 90 total days – or until approximately September 4, 2017 – within which to transmit either: (a) a written notification that it had made corrections to the account or (b) a written explanation as to why it believed the charges, as stated, were proper and would not be changed. See id. §1666(a)(3)(B)(i) and (ii).

As of September 5, 2017, or sometime shortly thereafter, when it became apparent that Capital One had not sent the required §1666(a) notices, Plaintiffs should have been aware of the alleged statutory violation. *See Wielicki v. Patient First*, No. 1:08-CV-00609, 2009 WL 10722448, at *5 (N.D. Ohio Feb. 12, 2009) ("A violation of § 1666(a) occurs 31 days after a creditor receives a notice of a claimed billing error and fails to respond properly to that notice or

91 days after notice if the creditor fails to resolve the billing dispute.") (citing *Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 776 (E.D. Mich. 2002)). Here, Plaintiffs did not file suit until October 10, 2018 – more than 13 months after the alleged violation, making the claim untimely.

Plaintiffs' proposed argument in favor of equitable tolling has no applicability under these circumstances. Any delay that was occasioned by Capital One's belated response on June 25, 2018 to the Plaintiffs' prior correspondence is of no legal moment, because the delay had no bearing on Plaintiffs' ability to timely assert a §1666 violation. Thus, Plaintiffs have failed to plausibly allege that "extraordinary circumstances" prevented them from asserting their claim in a timely fashion. Because the claim in Count IV falls outside of the applicable statute of limitations period and is not saved by equitable tolling, it is now time-barred.

### c. Alleged Violations of 15 U.S.C. §1643 (Counts II and III)

Counts II and III of the Amended Complaint are premised upon alleged violations of 15 U.S.C. §1643, which limits the liability of a credit card holder to $50.00 relative to charges incurred through the unauthorized use of a credit card. *See* 15 U.S.C. § 1643(a)(1)(B). Under the TILA, the term "unauthorized use" is defined as: "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." *Id.* § 1602(o); *see also* 12 C.F.R. § 226.12(b)(1).

Subsection (b) of Section 1643 provides that: "In any action by a card issuer to enforce liability for the use of a credit card, the burden of proof is upon the card issuer to show that the use was authorized" -- i.e., that the person using the card acted with at least apparent authority. 15 U.S.C. §1643(b). If the charges were unauthorized – meaning no actual, implied, or apparent

authority can be shown, then the cardholder may be held liable for up to $50.00, provided the card issuer proves that:

- the card is an accepted credit card;

- the card issuer gave adequate notice to the cardholder of the potential liability;

- the card issuer provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card;

- the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise; and

- the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it.

§1643(a)(1) and (b); *see* 12 C.F.R. § 226.12(b)(1)-(2).

In Count II of the Amended Complaint, Plaintiffs contend that Bittler was an unauthorized user of the Second Credit Account and, therefore, M&M's liability for Bittler's charges was statutorily limited to $50.00. Accordingly, Plaintiffs aver that Capital One must reimburse and/or charge back to M&M's account approximately $446,500.50 (which represents the total unauthorized charges of $446,550.60 minus M&M's statutory liability limit of $50.00). Additionally, Plaintiffs assert that Capital One must refrain from attempting to collect the balance of unauthorized charges not yet paid. To that end, Plaintiffs seek injunctive relief restraining Capital One from attempting to collect payment for unauthorized charges and/or directing Capital One to request removal of all adverse credit reports that it may have made relative to charges on the Second Credit Account.

Count III is based upon the alternative theory that, even if Bittler operated with apparent authority and was therefore an authorized user of the Second Credit Account, M&M's liability did not accrue until some point after Capital One issued the first billing statement that contained

13

the fraudulent charges. Thus, Plaintiffs aver that Capital One should reimburse and/or charge-back to M&M's account "an amount that represents the charges and transactions made by Bittler . . . that occurred before M&M reasonably should have known of the existence of the Second Credit Account, together with interest for M&M's loss of use of the funds." FAC ¶71(a).

Addressing the statute of limitations issue in the context of Counts II and III begs the question whether §1643 contains any basis for an actionable violation in the first place. Citing *Azur v. Chase Bank, USA, N.A.*, 601 F.3d 212, 217 (3d Cir. 2010), Capital One argues that §1643 does not create liability on the part of creditors or afford a private right of action to cardholders.

In *Azur,* the plaintiff entrusted his company's finances to a personal assistant, authorizing her to process payments on behalf of the company and allowing her to utilize his credit card number in order to make purchases at the plaintiff's request. Eventually the plaintiff discovered this his assistant had fraudulently obtained over $1 million in cash advances over a seven-year period, using the plaintiff's credit card and paying off the card with funds from the plaintiff's own bank account. The plaintiff brought suit against the credit card issuer under Section 1643, seeking "reimbursement" of the misappropriated funds. After the district court entered summary judgment in favor of the credit card issuer, the U.S. Court of Appeals for the Third Circuit affirmed, concluding that "Section 1643 does not provide the cardholder with a right to reimbursement." 601 F.3d at 217. The court's analysis centered on the language of Section 1643, which circumscribes the conditions under which a cardholder "shall be liable":

> the statute's plain meaning places a ceiling on a cardholder's obligations under the law and thus limits a card issuer's ability to sue a cardholder to recover fraudulent purchases. The language of §1643 does not, however, enlarge a card issuer's liability or give the cardholder a right to reimbursement.

*Id.* Recalling that it had "already reached this conclusion" in a previous decision, *id.*, the court

recalled its prior observations in *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d

Cir. 2008), *to wit*:

> "TILA § 1643 does not impose any obligation on issuers of credit cards to pay the
> costs associated with unauthorized or fraudulent use of credit cards. It simply limits
> the liability of cardholders, under certain circumstances, to a maximum of $50 for
> unauthorized charges. Indeed, § 1643 does not address, nor is it even concerned
> with, the liability of an Issuer or any party other than the cardholder for
> unauthorized charges on a credit card. Section 1643 imposes liability only upon the
> cardholder."

601 F.3d at 217 (quoting *Sovereign Bank,* 533 F.3d at 175 (addressing Section 1643 in the

context of an indemnification action)). Based on these principles, the *Azur* court held: "to the

extent that [the plaintiff] requests reimbursement under §1643 for money already paid to [the

card issuer], his claim fails." Id. at 217-18.

Plaintiffs nevertheless maintain that, even if Capital One's alleged §1643 violations are

not actionable through §1643 itself, they are actionable through §1640. As support for this

theory, Plaintiffs cite *Krieger v. Bank of America, N.A.,* 890 F.3d 429 (3d Cir. 2018).

In *Krieger*, the plaintiff fell victim to a computer scam that resulted in a $657 Western

Union charge on his credit card account. Plaintiff immediately notified his credit card issuer of

the situation and, after some back and forth discussions, the issuer initially credited the disputed

amount back to the plaintiff's charge account, indicating that it considered the dispute

"resolved." 890 F.3d at 435. Subsequently, however, the card issuer rebilled the plaintiff for the

$657 Western Union charge. The plaintiff then gave written notice that the charge was disputed

and requested that it be removed, but the credit card company declined to do so. The plaintiff

eventually paid the charge under protest and filed suit, alleging violations of the TILA and

common law negligence. In his pleading, the plaintiff alleged that the card issuer had violated

§1643, resulting in "actual damages," when the card issuer rebilled him (and hence, imposed

liability) for the full $657, knowing that the charge was potentially unauthorized. The district court rejected the plaintiff's claim on the grounds that §1643 does not provide a cardholder with a right of reimbursement or a private cause of action. *See* 890 F.3d at 437, 442.

On appeal, the U.S. Court of Appeals reversed the district court's dismissal of the §1643 claim. The court observed that §1640 provides a right of action as against "any creditor who fails to comply with any requirement imposed under [15 U.S.C. §§ 1631–1651]" and also allows the aggrieved person to recover, among other things, "any actual damage sustained by such person as a result of the failure." *Krieger,* 890 F.3d at 442 (quoting 15 U.S.C. § 1640(a)). Thus, the court concluded, "§ 1640 . . . provides a private right of action against an issuer that fails to comply with the conditions of §1643 before holding the cardholder liable for the unauthorized use of a credit card." *Id.* Because the plaintiff had alleged that the issuer caused him actual damages by violating a requirement of §1643, and because he invoked §1640 as the provision under which he was suing the court determined that the plaintiff "therefore did state an unauthorized-use claim[.]" 890 F.3d at 442.

The court next rejected the district court's conclusion that the plaintiff merely sought reimbursement, and that his claim was therefore barred by the holdings of *Sovereign Bank* and *Azur*. The court of appeals distinguished *Sovereign* and *Azur* on the ground that [n]either of those cases addressed an issuer's violation of §1643 by imposing over $50 in liability on a cardholder even after it was notified that the charges had been unauthorized. Nor did they mention, much less address, a cardholder's right under §1640 to recover 'actual damages.'" *Id.* at 443. The court stressed that the distinction between "reimbursement" and the "actual damages" that Krieger sought, was "significant":

> Unlike "reimbursement," which means "[r]epayment," Reimbursement, Black's Law Dictionary (10th ed. 2014), "actual damages," as we have interpreted the term in this

> very context, is tethered to total "actual losses," and, therefore, is "[a]n amount awarded to a complainant to compensate for a proven injury or loss," Vallies II, 591 F.3d at 157 (citation omitted). "Actual damages" under TILA thus serve to "compensate ... consumers" to the full extent they have "suffered actual harm." Id. at 158. That is the relief Krieger seeks here: not merely reimbursement of the $657 charge he paid under protest but the full "amount ... to compensate" him for the "actual harm" he may be able to "prove[ ]" as a result of BANA's violation of § 1643. Vallies II, 591 F.3d at 157–58. Sovereign Bank and Azur do not stand in the way of that claim.

890 F.3d at 443. The court also rejected the issuer's argument that it could not have imposed "liability" on the plaintiff, in violation of §1643, in the absence of filing a lawsuit. For purposes of §1643, the court held, "a cardholder incurs 'liability' for an allegedly unauthorized charge when an issuer, having reason to know the charge may be unauthorized, bills or rebills the cardholder for that charge. When an issuer does so, it must comply with the requirements of §1643, and when a cardholder alleges those requirements were violated, those allegations may state a claim under § 1640." Id. at 445.

In sum, *Azur* may be understood as holding that a cardholder has no substantive right under §1643 to reimbursement of amounts that were previously paid on a credit account prior to the discovery of an unauthorized charge. *Krieger,* on the other hand, holds that a cardholder has a substantive right to recover actual damages that result when a card issuer violates §1643 by billing or rebilling the cardholder for charges that the issuer has reason to know are unauthorized, and does so in a manner that is noncompliant with §1643's requirements. This would include billing or rebilling a cardholder for charges in excess of $50 when the issuer has reason to know that the charges in question are unauthorized.

As these principles relate to the instant case, Section 1643 does not afford Plaintiffs a right to reimbursement or charge-back of the amounts that Bittler fraudulently paid to cover her unauthorized charges on the Second Credit Account. Because there is no actionable right to reimbursement of these charges, no §1643 violation ever occurred and no enforceable cause of

action ever accrued by virtue of Capital One's failure to reimburse M&M. Accordingly, that aspect of Plaintiffs' claims must be dismissed for failure to state a claim upon which relief can be granted. *See RLFShop, LLC v. Am. Express Co.*, No. 3:17-CV-405, 2019 WL 499835, at *6 (S.D. Ohio Feb. 8, 2019) (dismissing putative §1643 claim because "Plaintiffs . . . allege that they paid the AMEX bills containing the disputed charges. They are therefore seeking reimbursement of monies paid, to which they have no right under Section 1643.") (citing *Azur*, 601 F.3d at 214–15, 217).

On the other hand, Section 1643 *does* give Plaintiffs a right to seek damages to the extent that Capital One held them "liable" (e.g., billed, or re-billed them) in an amount in excess of $50.00 for charges relating to Bittler's unauthorized use of the Second Credit Account, after learning that some or all of the outstanding charges in question were disputed. In their Amended Complaint, Plaintiffs allude to an "outstanding balance" on the Second Credit Account, and they seek an order enjoining Capital One "from taking any action to collect . . . the outstanding balance . . . ." FAC ¶1; see also id. ¶¶44, 47. Plaintiffs, however, do not indicate the amount of the outstanding charges. Thus, as currently pled, the Amended Complaint does not state a violation of §1643 based upon the wrongful billing (or rebilling) of still outstanding charges in an amount in excess of the statutory $50 liability limit.

In view of the foregoing, the Court concludes that the most prudent course is to allow the Plaintiffs an opportunity to replead their claims in Counts II and III in a manner that is consistent with the principles discussed in this Memorandum Opinion. Because it remains to be seen whether Plaintiffs can plead a viable federal claim, and because the lack of any viable federal claim would bear on this Court's discretion whether to exercise supplemental jurisdiction, the Court declines to address Defendants' motion to dismiss the state law claims at this juncture.

Defendants' motion to dismiss will be denied without prejudice insofar as the motion relates to Plaintiffs' claims under Pennsylvania law. Defendants will be free to reassert those same defenses as the future course of this litigation may warrant.

## IV. CONCLUSION

Based upon the foregoing reasons, the Defendants' motion to dismiss the Amended Complaint will be granted with respect to the federal claims in Counts I through IV. Plaintiffs' claims in Counts I and IV will be dismissed with prejudice as untimely. Plaintiffs' claims in Counts II and III will likewise be dismissed with prejudice to the extent those causes of action are based upon Plaintiffs' request for reimbursement and/or charge-back of amounts previously paid to Capital One by Bittler, using M&M's business account. Insofar as Plaintiffs' claims in Counts II and III relate to charges still outstanding on the Second Credit Account, those claims will be dismissed without prejudice to Plaintiffs' right to replead them. Defendants' motion to dismiss will be denied without prejudice to the extent it is directed at the state law claims in Counts V through VIII of the Amended Complaint.

An appropriate Order follows.


_Susan Paradise Baxter_
SUSAN PARADISE BAXTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARTHUR J. MALETTO and** | ) | |
| **M & M CONTRACTORS, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 1:18-cv-309-SPB** |
| **v.** | ) | |
| | ) | |
| **CAPITAL ONE FINANCE CORP. and** | ) | |
| **CAPITAL ONCE BANK (USA), N.A.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

AND NOW, this 30th Day of September, 2019, upon consideration of the Defendants'
Motion to Dismiss the First Amended Complaint, ECF No. [19], and all arguments and
submissions related thereto,

IT IS ORDERED, for the reasons set forth in the accompanying Memorandum Opinion,
that the motion shall be, and hereby is, GRANTED in part and DENIED in part as follows:

1. The Defendants' motion to dismiss is GRANTED with respect to the federal claims
   in Counts I through IV of the Amended Complaint. Plaintiffs' claims in Counts I and
   IV are dismissed with prejudice as untimely. Plaintiffs' claims in Counts II and III
   are dismissed with prejudice to the extent those causes of action are based upon
   Plaintiffs' request for reimbursement and/or charge-back of amounts previously paid
   to Capital One by Melissa Bittler, using M&M's business account. Insofar as
   Plaintiffs' claims in Counts II and III relate to charges still outstanding on the Second
   Credit Account, those claims are dismissed without prejudice to Plaintiffs' right to
   replead them.

2. The Defendants' motion to dismiss is DENIED without prejudice to the extent it is directed at the state law claims in Counts V through VIII of the Amended Complaint.

IT IS FURTHER ORDERED that the Plaintiffs may file an amended pleading, consistent with the Court's ruling herein, on or before **November 1, 2019.** In the event that Plaintiffs fail to file an amended pleading by November 1, 2019, the Court's dismissal of the remaining federal claims in Counts II and III will be converted to a dismissal with prejudice without further notice.

IT IS SO ORDERED.

*Susan Paradise Baxter*

SUSAN PARADISE BAXTER
United States District Judge